# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

ROBERT WAYNE SWEARENGIN,

        Plaintiff,

v.

NANCY A. BERRYHILL,
Acting Commissioner of the Social
Security Administration,[1]

        Defendant.

Case No. CIV-15-447-SPS

## OPINION AND ORDER

The claimant Robert Wayne Swearengin requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration denying her application for benefits under the Social Security Act. He appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the decision of the Commissioner is hereby REVERSED and the case is REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the

---

[1] On January 20, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Berryhill is substituted for Carolyn Colvin as the Defendant in this action.

Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: whether the decision was supported by substantial evidence, and whether the correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term "substantial evidence" requires "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). However, the Court may not reweigh the evidence nor substitute its discretion for that of the agency. *See Casias v. Secretary of*

---

[2] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if his impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), he is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that he lacks the residual functional capacity (RFC) to return to his past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account his age, education, work experience, and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was born on December 9, 1965, and was forty-eight years old at the time of the administrative hearing (Tr. 33, 169). He completed twelfth grade, and has worked as a vending machine servicer (Tr. 20, 187). The claimant alleges he has been unable to work since October 26, 2012, due to a stroke and walking problems (Tr. 186).

### Procedural History

On February 20, 2013, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. His applications were denied. ALJ James Bentley held an administrative hearing and determined the claimant was not disabled in a written decision dated March 17, 2014 (Tr. 10-24). The Appeals Council denied review, so the ALJ's written decision represents the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant retained the residual functional capacity ("RFC") to perform less than the full range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.697(b), *i. e.*, he

could lift twenty pounds occasionally and ten pounds frequently and stand/walk and sit for six hours in an eight-hour workday, and that he could frequently, but not constantly, handle and finger bilaterally. The ALJ further restricted the claimant from hazards such as heights or machinery, and stated that the claimant was able to avoid ordinary hazards in the workplace such as boxes on the floor, doors left ajar, or approaching people or vehicles. Additionally, the ALJ found he needed a sit/stand option, defined as a temporary change in position from sitting to standing and vice versa with no more than one change in position every twenty minutes and without leaving the workstation so as not to diminish pace or production. Finally, the ALJ limited the claimant to occasional contact with coworkers, supervisors, and the general public (Tr. 15). The ALJ concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform, *i. e*., small products assembler, conveyor line bakery worker, and parking-lot attendant (Tr. 20-21).

## Review

The claimant contends that the ALJ erred by: (i) improperly weighing his subjective symptoms and (ii) failing to account for his nonsevere impairment of insomnia in formulating the RFC. The Court agrees with the claimant's first contention.

The ALJ determined that the claimant had the severe impairments of hypertension, status post cerebrovascular accident with mild facial droop, obesity, and history of tobacco, cannabis, and intravenous methamphetamine abuse, as well as nonsevere impairments of anxiety and insomnia (Tr. 12). The medical evidence reflects that the claimant had a stroke and was admitted to the hospital on October 29, 2012 (Tr. 272). He

was discharged as medically stable with improved left-sided weakness (Tr. 272-273). An MRI of the brain revealed acute/subacute hemorrhage in the right thalamus and minimal surrounding edema with minimal mass effect (Tr. 284). A view of the claimant's chest was suggestive of long-standing hypertension (Tr. 306).

Treatment notes regarding the claimant's blood pressure variously note that it is under fair control (Tr. 332-350). In April 2013, the claimant's treating clinic sent him to the hospital because his blood pressure did not respond to medications but he had been splitting his medications and not taking them as directed (Tr. 344), and it improved in July 2013, but worsened again in August 2013 (Tr. 350, 443).

On April 23, 2013, Dr. Adel Malati conducted a consultative physical examination (Tr. 323). At the exam, the claimant walked without an assistive device, had full range of motion and 5/5 grip strength, and was able to heel/toe walk without difficulty and had a nice, steady gait (Tr. 326). Dr. Malati's clinical impression was status post cerebrovascular accident with mild facial droop, hypertension, hypercholesterolemia, and history of tobacco, pot, and methamphetamine use (Tr. 326).

At the administrative hearing, the claimant testified that he has problems with his vision, with numbness in both hands, and numbness in the left leg (Tr. 34-36). He stated that he does not use any assistive devices (Tr. 35). Additionally, he reported problems emptying his bladder (Tr. 36). He stated that he only drives two blocks to the post office, but does that every day (Tr. 37). He further testified that his blood pressure will spike every day, and that the left side of his face droops as a result of his stroke (Tr. 38). The claimant also testified that he takes medication because he gets really agitated, and that

he gets about four hours of sleep each night and sleeps about forty-five minutes during the day (Tr. 40). As for his activities, he testified that he mows the lawn every week to ten days, and takes two breaks while doing so, and that he also vacuums the house every week and takes out the trash (Tr. 41). In response to questioning, the claimant stated that he can stand for about thirty minutes before needing to sit or lay down (Tr. 42). The claimant also stated that he used illegal drugs three days before his stroke, and that drug use and cigarette use "probably did not help" (Tr. 46). When asked to name his most significant problems, the claimant named his legs, his hands, and his vision, in that order (Tr. 47).

In his written opinion, the ALJ extensively summarized the claimant's hearing testimony, as well as the available medical records (Tr. 14-20). As to the claimant's credibility, the ALJ used the typical boilerplate language, stating that his "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible," but then went on to explain his reasoning, including: (i) the medical evidence did not support his allegations; (ii) his onset date coincided with the day he reported last using methamphetamine intravenously; (iii) he reported his blood pressure spiked every day, but treatment notes reflected that his blood pressure had normalized; (iv) he reported blurry vision with his blood pressure problems, but on exam he had 20/25 in the left eye and 20/30 in the right eye; (v) his condition had not worsened since he collected unemployment benefits; and (vi) his reported activities of raking leaves, regularly mowing the lawn, and shopping were inconsistent with his claims of disabling limitations (Tr. 16-20).

The claimant contends, *inter alia*, that the ALJ erred in analyzing his credibility. At the time of the ALJ's decision, a credibility determination was governed by Soc. Sec. Rul. 96-7p. *See, e. g., Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004), *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186 (July 2, 1996). But the Commissioner issued a ruling on March 16, 2016, that eliminated the term "credibility" and provided new guidance for evaluating the intensity, persistence, and limiting effects of a claimant's symptoms. Soc. Sec. Rul. 16-3p, 2016 WL 1119029 (Mar. 16, 2016). "Generally, if an agency makes a policy change during the pendency of a claimant's appeal, the reviewing court should remand for the agency to determine whether the new policy affects its prior decision." *Frantz v. Astrue,* 509 F.3d 1299, 1302 (10th Cir. 2007), *quoting Sloan v. Astrue,* 499 F.3d 883, 889 (8th Cir. 2007). Although the ALJ's credibility analysis was arguably sufficient under the old standard, the record does not reflect how the ALJ would have evaluated the claimant's subjective statements under Soc. Sec. Rul. 16-3p.[3] Consequently, the decision of the Commissioner must be reversed and the case remanded to the ALJ for evaluation in accordance with the new standard.

## Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence.

---

[3] While it is arguable that the evidence cited by the ALJ in support of his credibility determination would likewise have satisfied Soc. Sec. Rul. 16-3p, thus obviating the need for reversal and remand, *see, e. g., Wellenstein v. Colvin,* 2015 WL 5734438, at *11 (N.D. Iowa Sept. 30, 2015) (noting that the Court of Appeals for the Eighth Circuit denied remand for consideration of a new social security ruling upon finding that "although the policy changed during the pendency of the case, the policy did not affect the case."), *citing Van Vickle v. Astrue,* 539 F.3d 825, 829 n.6 (8th Cir. 2008), the undersigned Magistrate Judge finds that any re-evaluation of the evidence in light of the new standard is not for this court to make on review but rather for the ALJ to consider in the first instance.

The Commissioner's decision is accordingly REVERSED and the case REMANDED for further proceedings consistent herewith.

    **DATED** this 2nd day of March, 2017.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**